LIBERTY MIRROR WORKS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE. RESPONDENT.

Docket No. 1531.   Promulgated June 20, 1944.

*Paul E. Hutchinson, Esq.*, for the petitioner.
*Richard L. Shook, Esq.*, for the respondent.

OPINION.

Smith, *Judge*: We shall first dispose of the respondent's motion to dismiss the proceeding, in so far as it relates to income tax for 1941, for want of jurisdiction. The respondent determined an overassessment of $543.31 in income tax for that year and a deficiency of $1,450.56 in excess profits tax. The petition contains no allegation of error with respect to the determination of income tax liability for that year. The respondent's determination of the deficiency in excess profits tax for 1941 confers no jurisdiction upon the Court with respect to income tax for that year. Respondent's motion to dismiss is accordingly granted, upon authority of *Scaife Co.*, 47 B. T. A. 964.

Our first question on the merits is whether petitioner realized taxable income in 1939 by reason of the forgiveness and cancellation in that year of $8,185.23 of its indebtedness of $30,307.21 to the City Deposit Bank & Trust Co.

The original amount of this indebtedness, $25,000, represented moneys advanced to petitioner for working capital in 1924 and 1925. The balance represented taxes advanced by the bank on the real estate which petitioner had mortgaged to the bank as security for the debt and accrued interest on such taxes. The bank released its mortgage in 1939 in order for petitioner to sell the property and at the same time agreed to settle petitioner's debt for the net proceeds of the sale plus petitioner's promissory note for $7,500. The net proceeds of the sale plus petitioner's promissory note was $8,185.23 less than the total indebtedness.

Respondent's contention is that there was not a gift or "a gratuitous cancellation of indebtedness" within the rule of *Helvering* v. *American Dental Co.*, 318 U. S. 322, because of the fact that there was a "consideration" for the cancellation of the debt.

In its opinion in the cited case the Supreme Court defined a gift as "the receipt of financial advantages gratuitously." It held that the forgiveness of the debt there, a portion of the accrued rent and interest, was gratuitous because it was "a release of something * * * for nothing."

Under the facts here, just what did the bank receive as consideration for its cancellation of a portion of petitioner's indebtedness? It received all of the net proceeds from the sale of the property; but it already held a mortgage on the property and was therefore its equitable owner. In addition it received petitioner's new unsecured promissory note for $7,500; but it already held petitioner's promissory

notes for $25,000, secured by the mortgage. It seems to us that the bank received nothing in the transaction to which it was not already entitled and which might be regarded as consideration, in a money or property sense. Cf. *Carroll-McCreary Co.* v. *Commissioner*, 124 Fed. (2d) 303. The new note merely replaced in part the old notes. In reality the bank received payment of a portion of the debt, extended a portion of it, and forgave the balance. Certainly the respondent can not contend that there is not a gratuitous cancellation where a creditor and a debtor agree to payment of a portion of an indebtedness and the forgiveness of the balance.

All of the circumstances here point to the conclusion that the creditor bank intended to make a gratuitous cancellation of the unpaid portion of the debt in question. Petitioner was in financial straits and had been for a number of years. On two previous occasions, in 1936 and 1937, this same creditor had forgiven larger amounts of petitioner's debts, apparently without any consideration. The bank may have considered all of the debts worthless to the extent of the amounts forgiven. In any event, we think that, under the rule of the Supreme Court in the *American Dental Co.* case, the canceled portion of the indebtedness was not taxable income to the petitioner.

As to the invested capital issue, petitioner contends that the forgiveness and cancellation of its debts by its creditors in 1936, 1937, and 1939 was the equivalent of money contributions to its capital and that the canceled debts should therefore be included in its equity invested capital for 1940 and 1941 as defined in section 718 of the Internal Revenue Code.[1] The respondent has determined otherwise, but he contends that in any event the contributions to capital, if such they were, were contributions of property, that is, choses in action, and not money; that, as property, the amount to be included in invested capital in respect thereof is the "unadjusted basis to the taxpayer for determining loss upon a sale or exchange under the law applicable to the taxable year for which the invested capital is being computed" (see sec. 30.718–1, Regulations 109) ; that the taxpayer's basis of the property (the forgiven debts) was the same as the donor's (sec. 113 (a) (2), Internal Revenue Code) ; and that the donor's basis was zero.

---

[1] SEC. 718. EQUITY INVESTED CAPITAL.

(a) DEFINITION.—The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (b)—

(1) MONEY PAID IN.—Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital;

(2) PROPERTY PAID IN.—Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange * * *

(4) EARNINGS AND PROFITS AT BEGINNING OF YEARS.—The accumulated earnings and profits as of the beginning of such taxable year.

We do not think that the gratuitous forgiveness of a corporation's debts by nonstockholder creditors necessarily results in a contribution to capital of either money or property. The creditor actually *pays in* nothing to the corporation. He merely foregoes his claim for the debt and relieves the corporation of the obligation to *pay out* on it. The Supreme Court said in *Helvering* v. *American Dental Co.*, *supra*, that this was "more akin to a reduction of sale price than to financial betterment through the purchase by a debtor of its bonds in an arm's-length transaction." The amount of a reduction in sale price, of goods furnished for instance, certainly would not be included in invested capital as paid-in surplus.

The cancellation of petitioner's accounts payable in each of the years 1936, 1937, and 1939 was reflected in its balance sheets for those years and served to increase its general surplus account, or, as the facts were, to reduce its surplus deficit. Petitioner had an operating deficit as well as a large deficiency in general surplus in each of the years. Operating losses and surplus deficiencies are not reflected, as such, in invested capital. Earned surplus at the beginning of the taxable year, though not the current earnings, is included in invested capital under section 718 (a) (4) above, but operating losses are not excluded and do not serve to reduce the paid-in invested capital.

The Supreme Court held in *Willcuts* v. *Milton Dairy Co.*, 275 U. S. 215, that the impairment to capital by reason of operating losses for prior years must first be restored before there can be any addition to invested capital by reason of such earnings and profits. Petitioner had large operating losses in all of the years after 1933. except 1935, when it had a small gain. It had a large surplus deficit at the beginning of each of the taxable years 1940 and 1941. Therefore the canceled debts could not have been taken into invested capital for either of those years.

Corporate debts gratuitously forgiven and canceled by nonstockholder creditors would not be included in invested capital as defined by the Supreme Court in *La Belle Iron Works* v. *United States*, 256 U. S. 377. That case arose under the War Excess Profits Tax Act of 1917. Invested capital was defined in section 207 of that act as:

(a) In the case of a corporation or partnership: (1) Actual cash paid in, (2) the actual cash value of tangible property paid in other than cash, for stock or shares in such corporation or partnership, at the time of such payment * * * and (3) paid in or earned surplus and undivided profits used or employed in the business, exclusive of undivided profits earned during the taxable year: * * *

That definition is similar in all respects here material to the definition of "equity invested capital" contained in section 718, Internal Revenue Code, *supra*. In denying the taxpayer's claim that it was entitled to include in invested capital the appreciation in the value of the assets after their acquisition, the Court said:

\* \* \* A scrutiny of the particular provisions of section 207 shows that it was the dominant purpose of Congress to place the peculiar burden of this tax upon the income of trades and businesses exceeding what was deemed a normally reasonable return upon the capital actually embarked. \* \* \* The word "invested" in itself imports a restrictive qualification. When speaking of the capital of a business corporation or partnership, such as the act deals with, "to invest" imports a laying out of money, or money's worth, either by an individual in acquiring an interest in the concern with a view to obtaining income or profit from the conduct of its business, or by the concern itself in acquiring something of permanent use in the business; in either case involving a conversion of wealth from one form into another suitable for employment in the making of the hoped-for gains. See Webster's New Internat. Dict. "Invest," 8; Century Dict. "Invest," 7; Standard Dict. "Invest," 1.

\* \* \* The provision of clause (3) that includes "paid in or earned surplus and undivided profits used or employed in the business" recognizes that in some cases contributions are received from stockholders in money or its equivalent for the specific purpose of creating an actual excess capital over and above the par value of the stock; \* \* \*

The Court further spoke of the manifest intention of Congress to limit the invested capital "to something approximately representative of the risks accepted by the investors in embarking their means in the enterprise."

In *Frank Holton & Co.*, 10 B. T. A. 1317, we held, quoting a part of the above excerpt of the opinion of the Supreme Court in the *La Belle Iron Works* case, that the invested capital of the corporation could not be increased by donations from nonstockholders. We said:

In the present case, while undoubtedly the contributors to the fund raised for purchasing the donated property hoped to benefit therefrom through the stimulation of business in the community, such hope is far removed from an expectation of gain through an investment in the business enterprise. As far as the record shows, neither the contributors nor the donor of the property were stockholders in the petitioner; they acquired no interest of any kind in it. In these circumstances, the cost of the property to the donor does not constitute paid-in surplus and no part of it can properly go into invested capital.

Where an indebtedness of a corporation is forgiven and canceled by stockholders under circumstances showing a purpose on their part to make an additional contribution to the corporation's capital and to increase their investment in the corporate enterprise, the amount of the canceled indebtedness has been recognized as an addition to invested capital. See A. R. R. 678, C. B. No. 5, p. 290; *The Parisian*, 2 B. T. A. 415; *Cohn-Goodman Co.*, 7 B. T. A. 475; *Charles F. L'Hommedieu & Sons Co.*, 6 B. T. A. 41.

In the instant case the creditors who forgave petitioner's debts were nonstockholders, except for F. G. Blackburn, who was treasurer and a director of the petitioner and was, it is stipulated, the "record holder" of one share of stock. The amount of the indebtedness forgiven by him was $4,500. It is obvious that he did not intend to make a contribution to petitioner's capital so out of proportion to his investment, if

such it was, in the business and in the absence of like contributions from the other stockholders. We must therefore regard his act of forgiveness as that of a creditor rather than a stockholder.

The evidence before us does not show that the forgiveness of any of the debts comprising the amount of $44,069.32 which respondent eliminated from petitioner's equity invested capital for 1940 and 1941 was for the purpose of, or resulted in, an addition to petitioner's statutory invested capital. We think that the respondent did not err in eliminating the amount from invested capital.

*Decision will be entered under Rule 50.*