Cocheco Woolen Manufacturing Company v. Commissioner.
Cocheco Woolen Mfg. Co. v. Comm'r
Docket No. 4175. United States Tax Court
1945 Tax Ct. Memo LEXIS 139; 4 T.C.M. (CCH) 753; T.C.M. (RIA) 45234; June 28, 1945
*139 Erwin N. Griswold, Esq., and E. Barton Chapin, Esq., 84 State Street, Boston, Mass., for the petitioner. Carl A. Statsman, Jr., Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: This case involves a deficiency in income tax for the fiscal year ended November 30, 1940, in the amount of $23,558.95, and deficiencies in income tax, declared value excess profits tax, and excess profits tax, for the fiscal year ended November 30, 1941, in the respective amounts of $19,779.82, $825.37, and $24,083.07. The issue is whether the petitioner realized taxable income in the fiscal year ended November 30, 1940, in the amount of $222,353.97 through the settlement by the payment of $162,403.24 of its liability of $384,757.21 on a note payable. Except for certain minor adjustments made by the Commissioner and not complained of by the petitioner, the deficiencies for the fiscal year ended November 30, 1941, arise from the refusal of the Commissioner to allow as a deduction from income a net operating loss carry-over from the previous year of $79,422.38. The correctness of the deficiencies in issue for the latter fiscal year depends upon the determination *140 in respect of the former year. The facts are stipulated and incorporate by reference the memorandum findings of fact and opinion of this Court in the case of George A. Adam, Docket No. 1720, entered June 28, 1944, [3 TCM 649], which involved the same transaction. The findings of fact are stated to the extent deemed necessary to present the issue. Findings of Fact The petitioner is a corporation organized under the laws of New Hampshire, having its usual place of business at Rochester, New Hampshire. It filed its Federal income, declared value excess profits, and excess profits tax returns for the fiscal years ended November 30, 1940, and November 30, 1941, with the collector of internal revenue at Boston, Massachusetts. The petitioner was engaged in the business of manufacturing woolen products. Parker, Wilder & Co., a partnership, was a factor engaged in the disposal of products manufactured by various woolen mills, including petitioner. On November 25, 1925, petitioner gave its demand promissory note in the amount of $385,257.21 to Parker, Wilder & Co. in settlement of an open account for advances previously made. Prior to 1940 the sum of $500 was paid on this *141 note. In 1940 this note was held through mesne endorsements by E. Barton Chapin, as agent for George A. Adam, William D. Judson and the estates of Samuel Rindge, Wellington Rindge and S. Parker Bremer, all owners of proportionate interests, which had been acquired in 1925 through the membership of the individuals and decedents in the firm of Parker, Wilder & Co. In 1940 the estates of Samuel Rindge, Wellington Rindge, and S. Parker Bremer had no interest in the partnership. Petitioner had been relying on advances from Parker, Wilder & Co. in order to carry on business, and on July 8, 1940, the partnership notified petitioner that no further advances would be made. As a result of the notice, petitioner ceased operations on July 29, 1940. On August 8, 1940, George A. Adam and William D. Judson demanded payment of the note in the then outstanding principal amount of $384,757.21. At a meeting of the stockholders of petitioner on August 21, 1940, resolutions were adopted to liquidate the corporation, to sell the business as a going concern at auction on September 3, 1940, and to authorize the corporation's treasurer to offer in compromise of the outstanding liability on the note 25 percent *142 of the balance due. If the offer was accepted, the note was to be cancelled upon the payment of the 25 percent and surrendered to the treasurer of petitioner. The offer was accepted by four of the owners of proportionate interests and rejected by the remaining owner, the New England Trust Co., one of the executors and trustees under the will of S. Parker Bremer. On August 28, 1940, the New England Trust Co., after investigation of the possibilities of realizing more on its interest in the note through the liquidation of petitioner, offered to settle its interest for one-third of the face amount, plus the net quick assets of petitioner, the amount thereof to be determined by an independent accounting firm. The proposed plan for liquidating the note was agreed to by Fulton Rindge, treasurer of petitioner and owner of more than one-third of its stock, and on August 29, 1940, he advised Chapin of his willingness to pay for the note, $128,252.40, (which amount was equal to one-third of the principal due) plus an amount equal to the net quick assets of petitioner. Chapin submitted the offer to the owners and further negotiations were held. The items to be included in "net quick assets" *143 were the subject of dispute and agreement was finally reached as to the scope of the term for the purposes of the offer. The holders of interests in the note accepted the offer of Rindge and on September 9, 1940, Rindge transmitted to Chapin his personal check for $128,252.40, representing one-third of the unpaid amount of the note. The net quick assets of petitioner were determ&ned to be $34,150.84. The personal check of Rindge for the amount was transmitted to Chapin on October 24, 1940. The note, endorsed by Chapin to the order of Rindge, was delivered to Rindge on or about October 24, 1940, with an instrument assigning the note to Rindge without recourse. Thereafter Rindge canceled the note and immediately delivered it to petitioner by depositing it in petitioner's safe. On October 25, 1940, petitioner reimbursed Rindge for the amount he had paid to Chapin. The transaction involved herein constituted a gratuitous forgiveness of the balance due on the note. George A. Adam and William D. Judson, holders of interests in this note, filed income tax returns for the year 1940 in which each claimed a bad debt deduction for the amount of his loss sustained in respect of his interest *144 in this petitioner's note by reason of the settlement thereof for less than the amount due. The Commissioner disallowed the bad debt deduction and allowed a long-term capital loss deduction of one-half of the amount of the loss. A petition to review the determination in his case was filed with this Court by Adam. This Court held that the loss to Adam resulting from the settlement of his proportionate interest in the note was deductible as a bad debt. Opinion The sole issue is whether petitioner derived income in the fiscal year ended November 30, 1940, from the discharge of its obligation on its note by the payment of less than the amount due. The petitioner contends that the decision of the Supreme Court in Helvering v. American Dental Co., 318 U.S. 322, is controlling. In that case the Court sustained the reversal by the Circuit Court of Appeals for the Seventh Circuit, 128 Fed. (2d) 254, of the decision of the Board of Tax Appeals, 44 B.T.A. 425, and held that where creditors of the taxpayer agreed to cancel certain interest due on notes and a lessor agreed to accept a part payment of back rent and cancel the rest of the obligation the *145 cancellations were excludible from income under section 22 (b) (3) of the Revenue Act of 1936. This Court has followed that decision in a number of cases. Cf. Shellabarger Grain Products Co., 2 T.C. 75, affirmed on this point by the Circuit Court of Appeals for the Seventh Circuit, 146 Fed. (2d) 177; George Hall Corporation, 2 T.C. 146; Pancoast Hotel Company, 2 T.C. 362; McConway & Torley Corporation, 2 T.C. 593; and Liberty Mirror Works, 3 T.C. 1018. The respondent contends that income was realized under the rule in the case of United States v. Kirby Lumber Co., 284 U.S. 1, holding that gain from the purchase by a corporation of its own securities in the open market at less than the issue price is taxable income. Respondent further contends that section 22 (b) (9) of the Internal Revenue Code, relating to income from the discharge of indebtedness by a corporation, applies and that, therefore, petitioner may not treat the cancellation as a gift deductible under section 22 (b) (3) of the Code; and that as petitioner has not complied with the requirements of section 22 *146 (b) (9) it may not claim the benefit of the exclusion authorized under that section. The petitioner did not purchase its securities in the open market, but negotiated with its creditors who ultimately waived a portion of their claim in order to conclude a settlement of the debt. In this vital respect this case differs from the Kirby Lumber Co. case, supra. We think the essential facts here can not be distinguished from those in the case of American Dental Co., supra, and that the amount of the debt cancelled was gratuitously forgiven by petitioner's creditors. In accordance with the rule of that case the amount gratuitously forgiven is excludible from gross income by reason of section 22 (b) (3) of the Internal Revenue Code, and is exempt from taxation under Chapter 1 of the Code. Therefore section 22 (b) (9) does not control as the respondent contends. We conclude that the amount of the forgiveness in the fiscal year ended November 30, 1940, was excludible under section 22 (b) (3) and that petitioner had a net operating loss carry-over in the succeeding fiscal year. Decision will be entered under Rule 50.