Carlisle Tire and Rubber Company v. Commissioner.
Carlisle Tire & Rubber Co. v. Commissioner
Docket No. 9767.
United States Tax Court
1947 Tax Ct. Memo LEXIS 73; 6 T.C.M. (CCH) 1082; T.C.M. (RIA) 47269; October 6, 1947
*73 S. L. Ruslander, Esq., First National Bank Bldg., Pittsburgh 22, Pa., for the petitioner. J. W. Bullion, Esq., for the respondent. HARLAN Memorandum Opinion HARLAN, Judge: The respondent determined a deficiency in the excess profits tax of petitioner for the calendar year 1943 in the amount of $72,762.71. The questions presented are: (1) Whether petitioner is entitled to accrue interest on excise taxes due to the United States Government after having compromised its indebtedness for such taxes with the Commissioner of Internal Revenue, and (2) Whether petitioner is entitled to include in its equity invested capital, under section 718 (a) (1) and (2) of the Internal Revenue Code, the amount of an indebtedness forgiven in favor of the petitioner by a nonstockholder. [The Facts] We find the facts to be as stipulated. The following recital of most of the stipulated facts and pertinent parts of exhibits attached thereto will suffice: 1. Petitioner is a corporation with its principal place of business at College and "C" Streets, Carlisle, Pennsylvania. Petitioner's excess profits tax return for the taxable year 1943 was filed with the *74 Collector of Internal Revenue for the First District of Pennsylvania, Philadelphia, Pennsylvania. 2. Petitioner keeps its records and files its returns on the accrual basis. 3. The principal business of petitioner for the years 1935, and prior thereto, to date, is the manufacture of tubes for automobile tires. 4. In 1934, the Federal Reserve Bank of Philadelphia, Pennsylvania, loaned petitioner the sum of $250,000, the payment of which was secured by the petitioner's pledging to the Federal Reserve Bank its First Refunding Mortgage Bonds in the amount of $273,000 as collateral therefor. The petitioner subsequently defaulted in making to the Federal Reserve Bank the payments which were due under the loan. 5. Because of the indebtedness referred to in paragraph 4, above, the Federal Reserve Bank, during 1939, conducted an engineering survey of the petitioner for the purpose of protecting its interest and determining ways and means, if possible, of placing the petitioner upon a profitable basis. 6. As a result of the survey referred to in paragraph 5 above, the Federal Reserve Bank forced a change in management of the petitioner and caused economies to be effected in its manner *75 of operation. 7. Subsequent to the survey referred to in paragraph 6 above, various conferences were held among representatives of the petitioner, officers of the Federal Reserve Bank, representatives of a creditor's committee, which represented unsecured creditors of the petitioner with claims totalling $75,731.46, and representatives of the Commissioner of Internal Revenue. The purpose of these conferences was to devise an arrangement among petitioner's creditors whereby they would forbear to exercise their claims for five years (1941 to 1945, inclusive) so that petitioner might operate for five years under the system inaugurated by the Federal Reserve Bank. 8. As of June 30, 1941, petitioner's mortgage indebtedness due to the various bondholders and which was prior to Federal tax liens was as follows: Federal Reserve Bank & Farmers
Trust Company
$289,244.64
Others
77,000.00
Total
$366,244.64
9. As of June 30, 1941, the petitioner's liability with respect to manufacturers' excise taxes on tubes for the period from August 1935 through December 1939 was as follows: Tax assessed
$202,849.63
Interest assessed
994.14
Accrued interest due to June 30, 1941
43,012.89
Accrued 5% non-payment penalty due
10,698.39
Total
$257,555.05
*76 10. On the basis of financial inability to pay the total liability of $257,555.05 (referred to in paragraph 9 above), the petitioner made a written "Offer in Compromise" to the Commissioner of Internal Reveue. 11. In connection with submission of said Offer in Compromise, the petitioner filed a statement of its financial condition. This statement discloses that as of July 30, 1941, petitioner's liabilities amounted to $898,446.41; that the fair market value of its assets was $566,807.60; and the forced sale value of its assets was $314,615.42. 12. Said Offer in Compromise was accepted by the Commissioner of Internal Revenue by letter dated April 14, 1942. Under this offer as accepted, the petitioner agreed to the following "Payment of 20 per cent of your annual net income for the next five years payable annually as determined for Federal income tax purposes but after Federal income taxes due for each of the five years have been deducted. In the event of sale of the taxpayer's property during the term of this agreement, 70 per cent of the excess realized over and above the mortgage indebtedness due the various bondholders prior to the Federal tax liens shall be paid to the United *77 States as final payment hereon, such final payment not to exceed the unpaid balance due on the Government's claim as of June 30, 1941 ($257,555.05), plus interest accrued after June 30, 1941, less any payments made theretofore under the terms of this offer or otherwise. Nothing herein contained shall interfere with the taxpayer making a token payment to general unsecured creditors at present parties to existing creditors' agreement up to 5 per cent of their recognized claims, which payment may be made as an inducement to said general unsecured creditors to execute a new creditors' agreement to run for a five-year period concurrent with the offer herein made. First computation of the installment payments hereunder shall begin with the calendar year 1941, and shall be payable quarterly beginning March 15, 1942. If the payments of 20 per cent of annual net income aggregate the amount of the Government's claim as of June 30, 1941 and accrued interest thereon in less than five years then this agreement shall terminate and the Government's claim shall be considered paid in full. "In addition to the foregoing you also agree to the waiver of refunds and all other conditions contained in *78 Form 6560, revised October 1938, except the payment of interest on the payments made under the terms of the agreement. "With the approval of the Acting Secretary of the Treasury, the terms of your compromise agreement set forth above have been accepted in compromise of the above-stated liability." 13. Petitioner's annual net income as determined by the petitioner under the definition of annual net income contained in said Offer in Compromise for the purpose of reporting to the Collector of Internal Revenue with respect to the payments due under said offer, was as follows: 20% of
Annual net
annual net
Year
income
income
1941
$ 33,394.41
$ 6,678.88
1942
32,804.52
6,560.90
1943
103,734.64
20,746.92
1944
64,503.83
12,900.77
1945
74,300.88
14,860.18
Total
$308,738.25
$61,747.65
14. The petitioner made the following payments on said Offer in Compromise to the Collector of Internal Revenue for the First District of Pennsylvania, Philadelphia, Pennsylvania: Year to which
Date of payment
applicable
Amount
April 20, 1942
1941
$ 6,678.88
March 10, 1943
1942
1,640.23
June 14, 1943
1942
1,640.23
Sept. 10, 1943
1942
1,640.22
Dec. 10, 1943
1942
1,640.22
March 13, 1944
1943
5,186.73
June 13, 1944
1943
5,186.73
Sept. 1, 1944
1943
5,186.73
Dec. 13, 1944
1943
5,186.73
March 14, 1945
1944
3,225.19
June 12, 1945
1944
3,225.19
Sept. 14, 1945
1944
3,225.13
Total
$43,662.21
*79 15. The Collector deposited the payments referred to in paragraph 14 above in his Special Deposit Account No. 891462, Misc. 143. These payments are to be retained in said account until the final liability of petitioner under the said offer is determined. 16. After issuance of the deficiency notice, the petitioner, by letter dated November 9, 1945, requested that the Collector of Internal Revenue for the First District of Pennsylvania grant a suspension of further payments. 17. The Collector granted the suspension in a letter dated December 12, 1945, the pertinent parts of which are as follows: "Your communication was forwarded to the Commissioner of Internal Revenue, and this office is now in receipt of a reply thereto advising that your request for a suspension of any further payments may be granted until it can be determined what balance, if any, will be due in connection with the compromise agreement, with the proviso, however, that the installment of $3,225.19, due December 15, 1945, as well as any payments due in the future in connection therewith, be deposited in some Federal or State Bank in Carlisle, Pennsylvania to be held in escrow pending the determination of the *80 Income Tax liability of the above-named Company for the years under consideration. "It is therefore respectfully requested that you make the deposit of the installment in one of your local banks in accordance with the above, and that a receipt for the amount deposited be forwarded to this office, together with a signed copy of the escrow agreement embodying substantially the terms of the aforementioned proviso." 18. Subsequently, the Farmers Trust Company, Carlisle, Pennsylvania, was designated as the escrow agent to hold further payments due under said Offer in Compromise in escrow. 19. The petitioner has deposited the following payments on said Offer in Compromise with Farmers Trust Company: Year to which
Date of payment
applicable
Amount
Dec. 15, 1945
1944
$ 3,225.26
Mar. 13, 1946
1945
3,708.93
June 10, 1946
1945
3,721.16
Sept. 12, 1946
1945
3,715.05
Dec. 13, 1946
1945
3,715.04
Total
$18,085.44
20. The petitioner in making the abovementioned payments to the Collector designated them as payments applying on the said Offer in Compromise. In making the above-mentioned deposits with the Farmers Trust Company, the petitioner designated *81 them as deposits with respect to said offer which were to be held in escrow. 21. The petitioner did not accrue on its books and records during the taxable years 1941, 1942 or 1943 any amount alleged to represent interest on either the total liability as of June 30, 1941 of $257,555.05 or the assessed excise tax and interest of $203,843.77. Nor did petitioner claim interest on either of the foregoing amounts as a deduction in its returns for the taxable years 1941, 1942 or 1943. 22. The petitioner in 1944 recorded on its books accruals alleged to represent interest on the total liability of $257,555.05 for the years 1941, 1942 and 1943 as follows: Year
Amount
July 1, 1941 to Dec. 31, 1941
$ 7,726.65
1942
15,453.30
1943
15,453.30
Total
$38,633.25
23. The total amount of $38,633.25, referred to in paragraph 22 above, was charged against surplus during the year 1944. Accruals for the years 1944 and 1945, respectively, were currently made on the books and records and were charged to expense. 24. In 1932 Rogers, Brown and Crocker Brothers, Inc., importers and brokers, located in New York City, were creditors of petitioner in the amount of $550,598.10 for *82 rubber purchases, accrued interest and rubber wash sales representing purchases made by petitioner during the years 1930, 1931 and 1932. The amount of purchases for the year 1932 was $47,658.42. The amounts representing rubber purchases and rubber wash sales for the years 1930 and 1931 were due and owing to Rogers, Brown and Crocker Brothers, Inc., as of January 1, 1932. The amount representing 1932 purchases was due and owing to Rogers, Brown and Crocker Brothers, Inc., as of May 1932. 25. In 1932 Rogers, Brown and Crocker Brothers, Inc., because of financial difficulties, was being operated by a creditor's committee representing its creditors and said committee, in 1932, was pressing petitioner for a settlement of its account. 26. On June 23, 1932 petitioner consummated a settlement with a representative of the creditor's committee of its account with Rogers, Brown and Crocker Brothers, Inc., by which petitioner was released from all rubber contract obligations and its debt by the payment of $50,000 in cash. 27. Rogers, Brown and Crocker Brothers, Inc., was not in 1932 or at any other time a stockholder of petitioner. The settlement was made as the result of direct negotiations *83 between petitioner and a representative of the creditor's committee of Rogers, Brown and Crocker Brothers, Inc., and was agreed to because of the poor financial condition of petitioner as of June 1932. 28. The cancellation of the indebtedness in the amount of $550,598.10 was credited to the following accounts on the petitioner's books: Surplus
$452,939.68
Profits and Loss
47,658.42
$500,598.10
29. The indebtedness to Rogers, Brown and Crocker Brothers, Inc., both as to merchandise received and as accrued interest resulted in deductions from gross income in petitioner's income tax returns for the years 1930, 1931 and 1932. The parties hereto did not treat the forgiveness of the indebtedness as a realization of income. 30. The profit or loss reported by petitioner in its corporation income tax returns for the years 1930 to 1943, inclusive, was as follows: Year
1930
[482,214.21)
1931
( 43,572.11)
1932
( 7,077.92)
1933
( 31,208.44)
1934
( 67,953.95)
1935
[ 45,818.51)
1936
( 91,191.84)
1937
( 85,461.80)
1938
( 41,404.88)
1939
( 98,383.50)
1940
( 86,558.92)
1941
( 52,846.25)
1942
( 17,768.93)
1943
182,908.70
31. *84 The petitioner's surplus or deficit at an end of each of the years 1930 to 1943, inclusive, is shown below: Year
1930
[ 9,672.99)
1931
500,960.96
1932
542,316.28
1933
478,747.37
1934
414,586.38
1935
327,416.46
1936
204,525.55
1937
87,880.14
1938
24,386.55
1939
( 68,485.29)
1940
(150,301.87)
1941
(121,261.71)
1942
( 93,357.69)
1943
( 36,889.36)
[Opinion] The first contention of petitioner is that the respondent erred in denying it the right to deduct accrued interest on its manufacturing excise tax indebtedness. The petitioner's argument in support of this contention is, briefly stated, that the terms of settlement contained in the compromise agreement provided for the payment of interest; that inasmuch as interest was payable on its debt to the government, it was entitled to accrue and deduct such interest in the taxable year, its books having been kept on the accrual basis; that under the terms of settlement on the five-year basis, no calculation could be made of the amount of principal remaining due at the end of each year unless the payments made annually were first credited against the interest due; that where a partial payment *85 is made on an interest-bearing debt the payment is to be credited first to interest and then to principal; and that both it and the respondent construed the compromise agreement as requiring the payment of interest. The latter statement is not supported by the evidence. Petitioner's argument is based upon the erroneous premise that under the terms of the settlement it had a fixed obligation to pay the amount of $257,555.05 plus accrued interest thereon. If this were so, then the principle, relied upon by petitioner, that where a partial payment is made on an interest-bearing debt the payment is to be credited first to interest and then to principal, would be applicable, and a deduction for interest would be proper. Theodore R. Plunkett, 41 B.T.A. 700, aff'd. 118 Fed. (2d) 644. But we do not have such a situation before us. The petitioner, as of June 30, 1941, was insolvent and unable to satisfy its excise tax liability. It submitted an offer in compromise to the Commissioner wherein it offered to compromise its indebtedness for excise taxes, plus accrued interest and penalty, amounting to $257,555.05, by paying to the Commissioner 20 per cent of its net *86 income (after taxes) for the next successive five years, beginning June 30, 1941. This offer was made on the standard Treasury Department Form 656-C, Revised Oct. 1938. From this standard printed from the following provision was deleted: "* * * together with interest at the rate of 6 per cent per annum on all deferred payments from the date this offer is received by the collector until the respective payments are made in full, * * *." The two final paragraphs of the letter of the Commissioner, dated April 14, 1942, in which the terms of the compromise offer were accepted, read as follows: "In addition to the foregoing you also agree to the waiver of refunds and all other conditions contained in Form 656-C, revised October 1938, except the payment of interest on the payments made under the terms of the agreement. [Italics ours.] "With the approval of the Acting Treasury, the terms of your compromise agreement as set forth above have been accepted in compromise of the above-stated liability." It is true, as petitioner points out, that two provisions of the settlement agreement do mention accrued interest. The first deals with the possibility of a sale of petitioner's property *87 and provides that in the event this contingency occurred the amount the United States should receive would be 70 per cent of the excess realized over and above the mortgage indebtedness, but not to exceed the unpaid balance due the government as of July 30, 1941, plus interest accrued after June 30, 1941. The second deals with the possibility that 20 per cent of petitioner's net income might exceed the amount of the government claim before the expiration of the five-year period, and provides that in that event the claim shall be considered to be paid in full when the payments "aggregate the amount of the Government claim as of June 30, 1941 and accrued interest thereon." Here we have an offer in compromise in which a printed provision for the payment of 6 per cent per annum on deferred payments was deleted, an acceptance of the offer in which the government specifically recognized that the taxpayer was agreeing to all the provisions except the deleted provision, and two other provisions which were both in the offer and the acceptance indicating that in the event of a sale or the receipt of enough income to take care of the government's claim before the end of the five-year period, *88 accrued interest at an unspecified rate was to be received by the government. In Helvering v. Russian Finance & Construction Corporation, 77 Fed. (2d) 324, the Circuit Court of Appeals for the Second Circuit made the following pertinent statement with respect to the accrual of expenses: "The word 'accrued' should be interpreted in accordance with the statutory requirements that accounts clearly reflect income. In United States v. Anderson, 269 U.S. 422, 46 S.Ct. 13170 L. Ed. 347, it was said that an expense may be said to accrue when all the events have occurred which fix its amount and determine that it is to be incurred by the taxpayer. In order to be accruable in the taxable year for which the return is made, a valid obligation to pay must have existed in that year, which is enforceable on the date when the obligation is due. When, however, the obligation to pay is contingent upon the happening of some future event, there is no certainty that it will be paid or will accrue. In such event, no obligation accrues from a fixed or determinable source and no duty arises or exists in the taxable year which can be accounted for as income under any system of *89 accounting. When the right to receive income or the obligation to expend money is certain, not dependent upon the happening of some contingency, it may be classified as accrued. * * *" As we construe the compromise agreement the petitioner had no fixed obligation during the taxable year to pay interest on $257,555.05, the amount at which its excise indebtedness to the government was compromised as of June 30, 1941. Interest under the terms of the offer is compromise and acceptance was only to be taken into consideration in the event of the happening prior to the end of the five-year period of the two contingencies heretofore mentioned. As long as there was no sale and 20 per cent of the net income prior to the end of the five-year period did not exceed the amount of the government's claim, all that petitioner was obligated to pay was 20 per cent of its annual net income over a five year period, after Federal income taxes had been deducted. Neither of these contingencies happened either during the taxable year or during the five-year period, and, following Helvering v. Russian Finance & Construction Corporation, supra, we held that inasmuch as any obligation on petitioner's *90 part to pay interest was contingent upon events which did not happen, the respondent correctly determined that it was not entitled to accrue and deduct any interest on its indebtedness to the government during the taxable year. The remaining question is whether the respondent correctly excluded from the petitioner's equity invested capital the sum of $452,939.68. Briefly, the facts are that in 1932 petitioner settled a debt of $550,598.10 owed to a general creditor and non-stockholder for $50,000, and in that year credited its surplus with $452,939.68 because of this settlement. Petitioner argues that in crediting this amount to surplus it followed the rule of sound accounting practice and that under recognized accounting practice this credit to surplus represents a true "Paid-in Surplus". It contends therefore that it was properly includible in equity invested capital. In Liberty Mirror Works, 3 T.C. 1018, the facts did not differ materially from those in the instant proceeding. We there held that the aggregate amounts of debts forgiven by petitioner's creditors in 1936, 1937, and 1939 and credited to surplus account in those years was not includible in "equity *91 invested capital" for 1940 and 1941 as "paid-in surplus, or as a contribution to capital" within the meaning of section 718 (a) (1) and (2), I.R.C. No useful purpose will be subserved by repeating what we said in that proceeding. It controls the issue here involved, and following it we hold that the respondent correctly determined that the amount of $452,939.68 was not properly includible in petitioner's equity invested capital. Judgment will be entered for the respondent.