T.C. Memo. 1997-298


UNITED STATES TAX COURT


2925 BRIARPARK, LTD., JAMES C. MOTLEY, TAX MATTERS PARTNER,
Petitioner <u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 22320-94.                    Filed June 30, 1997.


<u>Alan L. Tinsley</u> and <u>Charles B. Koerth</u>, for petitioner.

<u>Dennis M. Kelly</u>, for respondent.


MEMORANDUM OPINION


HAMBLEN, <u>Judge</u>:  Respondent issued a notice of final partnership administrative adjustment (FPAA) to 2925 Briarpark, Ltd. (Briarpark), and determined adjustments in Briarpark's ordinary income, gains derived from dealings in property, and the

partners' capital accounts for 1989.[1]  After concessions, the issue for decision is whether the income realized from the discharge of nonrecourse loans should be treated as gain derived from dealings in property includable in gross income under section 61(a)(3) or as discharge of indebtedness income within the meaning of section 61(a)(12).

This case was submitted without a trial pursuant to Rule 122.[2]  The stipulation of facts and the attached exhibits are incorporated by this reference, and the facts contained therein are found accordingly.

### Background

Briarpark is a Texas limited partnership whose principal place of business, at the time of filing the petition, was Houston, Texas.  Briarpark is subject to TEFRA provisions contained in sections 6221 through 6233.  During 1989, the partners in Briarpark were:

| Name | Type of Partnership Interest |
| --- | --- |
| Janet Stein | General partner |
| Robert Husmann | General partner |
| William C. Motley | General partner |
| Billy G. Motley | General partner |
| Jon D. Motley | General partner |
| James H. Motley | General partner |

[1]The FPAA was mailed to the tax matters partner and each of the partners entitled to notice.

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code as in effect for the year at issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

- 3 -

James C. Motley                          General partner
David D. Livingston, as trustee          Limited partner

James C. Motley (Mr. Motley) was a general partner and the tax
matters partner of Briarpark.

During 1983 and 1984, Briarpark acquired a 3-acre parcel of
land at 2925 Briarpark Road (property) and constructed a 12-story
office building on the property.  Around September 27, 1983,
Briarpark borrowed $21,600,000 from InterFirst Bank Houston
(InterFirst) to finance the acquisition of the property and the
construction of the building (original loan).  Mr. Motley
executed a guaranty for principal, interest, penalties, expenses,
and fees due on the original loan.

On May 28, 1987, Briarpark and InterFirst modified and
extended the original loan (modified loan) pursuant to a modified
loan agreement.  Under the agreement, Mr. Motley's obligation
under the guaranty was limited to $5 million, the original loan
was converted from recourse to nonrecourse, and the accrued but
unpaid interest in the amount of $3,100,000 was capitalized.  At
that time, InterFirst estimated that the fair market value of the
property was approximately $17 million.  Also on May 28, 1987,
Briarpark obtained a loan in the amount of $1,500,000 for tenant
improvements (build-out loan) on a nonrecourse basis.

On April 15, 1988, Briarpark filed its U.S. Partnership
Return, Form 1065, for taxable year 1987.  Briarpark did not
report any income on its 1987 return with respect to the original

loan or the build-out loan. Briarpark was not subject to an examination by the IRS for the taxable year 1987.

First Republic Bank Houston (First Republic) became the successor in interest to InterFirst. The Federal Deposit Insurance Corporation, as receiver for First Republic, assigned the modified loan and the build-out loan (the loans) to NCNB Texas National Bank (NCNB or bank).

During March 1989, Briarpark submitted an application to NCNB seeking to modify the loans. On March 15, 1989, Mr. Motley submitted several similar proposals to NCNB regarding the sale of the property. In NCNB's view, the best proposal was one in which the property would be sold for $12,700,000.

As of July 1989, Briarpark was in default on the loans. On July 21, 1989, Briarpark signed a sale agreement to sell the property to Dan Associates. Dan Associates conditioned its purchase of the property upon Briarpark's arranging the satisfaction or removal of the encumbrances for consideration paid to NCNB not in excess of $11,490,000. On July 31, 1989, NCNB agreed to release its liens to allow the sale of the property to Dan Associates for $12,200,000 with the proceeds being assigned to NCNB.

On October 5, 1989, Briarpark and Dan Associates amended the sale agreement. Under the amended agreement, Briarpark was required to arrange the satisfaction of the loans and removal of the encumbrances for consideration not exceeding $11,036,000. On

October 11, 1989, Mr. Motley's liabilities exceeded his assets by $13,497,675. On October 16, 1989, NCNB agreed to allow the cash sale of the property for $11,600,000 and to settle with Mr. Motley on his guaranty for $175,000.

On November 3, 1989, Briarpark, Mr. Motley, Dan Associates, and NCNB entered into a conditional release agreement (November 3, 1989 agreement).[3] In the November 3, 1989 agreement, NCNB agreed to release the property from all liens and security interests upon satisfaction of the following conditions: (1) The sale of the property to Dan Associates for a minimum sale price of $11,600,000, (2) the assignment of the sale proceeds to the bank, (3) the transfer of Briarpark's cash reserves, and (4) the payment of $175,000 by Mr. Motley to the Bank.

On December 27, 1989, the outstanding balances of the modified loan and the build-out loan were $24,562,763 and $1,019,418, respectively. Briarpark sold the property to Dan Associates for $11,600,000. Briarpark incurred selling expenses of $554,901. Dan Associates paid $10,936,532 of the proceeds to NCNB. The adjusted basis of the property was $11,661,245. Also on December 27, 1989, NCNB released the liens against the property and released Mr. Motley from his guaranty of the modified loan. Mr. Motley paid $175,000 in cash to the bank.

---

[3]The complete terms of the conditional release agreement were not available, for a page of the agreement was missing from the joint exhibit provided to the Court.

Briarpark transferred its cash reserves of $177,495 to NCNB.  As of December 31, 1989, Briarpark had no assets and ceased business operations.

On its 1989 Federal partnership income tax return, Briarpark reported cancellation of indebtedness income (COI income) of approximately $14,468,154 as a result of the November 3, 1989, agreement.  The reported amount is calculated as follows:

| | |
|---|---|
| Modified loan balance | $24,562,763 |
| Build-out loan balance | 1,019,418 |
| Total loan balance | 25,582,181 |
| Less sale proceeds from Dan Associates | (10,936,532) |
| Less cash reserves paid to NCNB | (177,495) |
| Net COI income | 14,468,154 |
| | =========== |

## Discussion

The parties do not dispute that the loans were nonrecourse during 1989.  The issue before us is whether the income realized from the discharge of the loans should be treated as gains derived from dealings in property includable in gross income under section 61(a)(3) or as cancellation of indebtedness (COI) income within the meaning of section 61(a)(12).

Petitioner contends that the discharge of $14,468,154 of Briarpark's modified and build-out loans (loans) by NCNB should be characterized as COI income under section 61(a)(12). Respondent argues that the entire balance of the loans must be included in the amount realized and that the resulting gain is

taxable under section 61(a)(3).  Ultimately, we agree with respondent.

Petitioner bears the burden of proof on this issue.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Freytag v. Commissioner, 904 F.2d 1011, 1017 (5th Cir. 1990), affg. 89 T.C. 849 (1987), affd. 501 U.S. 868 (1991).  For the first time on brief, respondent increased Briarpark's amount realized by $485,973, decreased its adjusted basis by $555,512, and deducted its selling expenses of $554,901, thereby increasing Briarpark's gains derived from dealings in property by $486,584.[4]  These modifications result in an increased deficiency and are new matters under Rule 142.  See Cox v. Commissioner, T.C. Memo. 1982-667.  Respondent did not assert an increased deficiency in his answer.  Additionally, respondent did not move to conform the

---

[4]In the notice of deficiency, respondent calculated the gain derived from dealings in property as follows:

| | |
|---|---|
| Amount realized | $25,582,181 |
| Less adjusted basis | (11,661,245) |
| Gain | 13,920,936 |
| | ========== |

On opening brief, respondent calculated the amount realized and the resulting gain as follows:

| | |
|---|---|
| Cash proceeds from Dan Associates | $11,600,000 |
| Debt discharged as a result of the sale | 14,468,154 |
| Total amount realized | 26,068,154 |
| Less adjusted basis | (11,105,733) |
| Less selling expenses | (554,901) |
| Gain | 14,407,520 |
| | ========== |

pleadings to the proof. Id. If we were to allow respondent to claim the increased deficiency for the first time on brief, petitioner would be deprived of the opportunity to present evidence to controvert whatever evidence respondent relies upon to sustain his burden of proving the new matter. Respondent is, therefore, limited to the determination of gain contained in the notice of deficiency. Commissioner v. Transport Manufacturing & Equip. Co., 478 F.2d 731 (8th Cir. 1973), affg. Riss v. Commissioner, 56 T.C. 388 and 57 T.C. 469 (1971); Fox Chevrolet, Inc. v. Commissioner, 76 T.C. 708 (1981); Rubin v. Commissioner, 56 T.C. 1155, 1163 (1971), affd. 460 F.2d 1216 (2d Cir. 1972).

Gross income includes discharge of indebtedness, sec. 61(a)(12), and gains derived from dealings in property, sec. 61(a)(3). Under section 61(a)(12), a taxpayer realizes income when a creditor discharges nongratuitously all or a portion of a taxpayer's debt. Sec. 61(a)(12); sec. 1.61-12(a), Income Tax Regs.

For purposes of section 61(a)(3), section 1001 and the regulations thereunder govern the method by which the amount of gain or loss realized upon a sale or disposition of property is calculated. The amount of gain realized is the excess of the amount realized over the taxpayer's adjusted basis in the property, and the amount of loss realized is the excess of the adjusted basis over the amount realized. Sec. 1001(a). The "amount realized" is defined by section 1001(b) as the sum of any

money received plus the fair market value of the property received.  Section 1.1001-2(a)(1), Income Tax Regs., further defines "amount realized":

> Except as provided in paragraph (a)(2) and (3) of this section, the amount realized from a sale or other disposition of property includes the amount of liabilities from which the transferor is discharged as a result of the sale or disposition.

Various methods exist by which indebtedness may be satisfied, each method producing a different tax consequence.  Danenberg v. Commissioner, 73 T.C. 370, 381 (1979).  Whether the realized income is gain on the disposition of property or COI income depends on the particular facts.  Id.

In the instant case, the sale of the property, the transfer of cash of $177,495, and the assignment of the sale proceeds to NCNB has the same practical effect as several other transactions which have been held to be a "sale or exchange".  Helvering v. Hammel, 311 U.S. 504 (1941) (holding that an involuntary foreclosure sale of real estate was a sale or exchange); Allan v. Commissioner, 856 F.2d 1169 (8th Cir. 1988) (treating the taxpayer's reconveyance of property subject to nonrecourse debt as a sale or exchange), affg. 86 T.C. 655 (1986); Yarbro v. Commissioner, 737 F.2d 479, 483-485 (5th Cir. 1984) (holding that an abandonment of real property subject to a nonrecourse debt was an exchange; i.e., an act of giving one thing in return for another thing regarded as equivalent), affg. T.C. Memo. 1982-675; Laport v. Commissioner, 671 F.2d 1028 (7th Cir. 1982) (holding

the taxpayer's conveyance of property subject to nonrecourse debt to the mortgagee by quitclaim deed in lieu of foreclosure was a sale or exchange), affg. T.C. Memo. 1980-355; Middleton v. Commissioner, 77 T.C. 310, 321 (1981) (holding the taxpayer's abandonment of real property subject to nonrecourse debt was a sale or exchange), affd. 693 F.2d 124 (11th Cir. 1982); Freeland v. Commissioner, 74 T.C. 970 (1980) (holding the taxpayer's conveyance of property encumbered by nonrecourse debt to the mortgagee was a sale or exchange); Estate of Delman v. Commissioner, 73 T.C. 15, 28 (1979) (holding repossession of property subject to a nonrecourse obligation is to be treated as a sale or exchange).

The transaction before us is the functional equivalent of a foreclosure, reconveyance in lieu of foreclosure, abandonment, or repossession. The same consequences flow from the November 3, 1989, agreement as in the cases cited supra p. 9: the mortgagor in each case is relieved of debt encumbering property and also is relieved of the obligation to pay taxes and assessments against the property. Yarbro v. Commissioner, supra at 483; Laport v. Commissioner, supra at 1032-1033; Freeland v. Commissioner, supra.

Any differences between the above transactions and the transaction in the instant case are not in substance, but in form. For example, the fact that NCNB did not directly take title to the property is immaterial. See Sands v. Commissioner,

T.C. Memo. 1997-146 (holding that the discharge of nonrecourse debt and release of ownership in the property that secured the debt is a sale or exchange even though the mortgagee did not take title to the property).

Petitioner argues that the discharge of the loans by the mortgagee falls under the purview of Gershkowitz v. Commissioner, 88 T.C. 984 (1987), and Rev. Rul. 91-31, 1991-1 C.B. 19. In Gershkowitz, several partnerships were involved in two identical transactions. Each partnership satisfied $250,000 of nonrecourse loans with a cash payment of $40,000 but retained the property securing the loans. Each partnership obtained the funds to settle the above loans by borrowing the $40,000 from another lender on a nonrecourse basis and ultimately satisfying the latter loan by transferring the encumbered property to the lender.

We held that the cancellation of the $250,000 of nonrecourse loans without the surrender of the property securing those loans resulted in COI income under section 61(a)(12) to the extent that the canceled debt exceeded the cash payment. Gershkowitz v. Commissioner, supra at 1014. With respect to each nonrecourse loan of $40,000, we held that the entire outstanding balance of the loan must be included in the amount realized in the calculation of gain under section 1001. Id. at 1016.

Petitioner maintains that the facts are similar to those of Gershkowitz in that NCNB agreed to discharge $25,582,181 of

nonrecourse debt in exchange for a cash payment of $11,114,027 of which only $177,495 was from petitioner's own funds and the remaining $10,936,532 was the proceeds from the sale to Dan Associates. We disagree. We recognized in Gershkowitz that the tax consequences from the discharge of nonrecourse debt depend upon whether the mortgagor transfers or retains the property securing the debt and, accordingly, analyzed the tax consequences of each debt separately. The taxpayers in Gershkowitz discharged the two loans in independent settlements, in one of which the taxpayers retained the encumbered property and in the other of which they did not.

Petitioner would have us treat the cash sale and the discharge of the loans as two independent events. The record before us, however, is replete with evidence that both loans were discharged as a result of a single transaction involving the sale of encumbered property. NCNB conditioned the discharge of the loans upon the sale of the property, and Dan Associates conditioned the purchase upon that discharge. At the end of the day, NCNB had the proceeds from the sale, Dan Associates had the property, and Briarpark was relieved of the entire balance of the loans. In the foregoing context, the arrangements among NCNB, Dan Associates, and Briarpark embodied a single transaction to sell the property securing the loans. Accordingly, we must conclude that Gershkowitz is not dispositive in the instant case.

Petitioner's reliance on Rev. Rul. 91-31, supra, is also flawed. In Rev. Rul. 91-31, supra, the taxpayer purchased an office building for $1 million. In obtaining the purchase funds from a third-party lender, the taxpayer executed a nonrecourse note. When the building's value dropped to $800,000, and the outstanding principal on the note was still $1 million, the lender agreed to modify the terms of the note's principal amount to $800,000. The Commissioner concluded that Commissioner v. Tufts, 461 U.S. 300 (1983), and Gershkowitz v. Commissioner, supra, required COI income to be recognized, pursuant to section 61(a)(12), to the extent the lender reduced the principal of the undersecured, nonrecourse debt. Rev. Rul. 91-31, supra, is distinguishable because the facts therein did not involve the sale or exchange of the encumbered property.

Petitioner maintains that NCNB agreed to the discharge and cash sale because it was in the bank's best interests rather than as an accommodation to Briarpark. The fact that NCNB, as a profit-oriented entity, acted for economic reasons and agreed to the transaction herein is not a sufficient basis for altering the character of the gain realized by Briarpark on the transaction.

Petitioner argues that the amount realized includes nonrecourse debt only if the purchaser assumes that debt. In support of his position, petitioner relies upon Commissioner v. Tufts, supra; section 1.1001-2(a), Income Tax Regs; and section 1.1034-1(b)(4), Income Tax Regs. In Tufts, the Supreme Court

held that when a taxpayer sells or disposes of property subject to nonrecourse debt in an amount in excess of its fair market value, it must include in the amount realized the balance of the nonrecourse debt even if such amount exceeds the fair market value of the transferred property.  Even assuming that Dan Associates did not take the property subject to the modified and build-out loans, we do not agree that Tufts was intended to limit the liabilities included in the amount realized to only those assumed by a third-party purchaser.  The holding in Tufts focused on the amount, not the character, of the gain or loss.  Moreover, its rationale supports respondent's position in the instant case to the extent that the concept of "amount realized" for computing gain or loss may be equated with the concept of consideration for "sale or exchange" purposes.  Commissioner v. Tufts, supra; Yarbro v. Commissioner, 737 F.2d at 484.

Moreover, we are not persuaded that the regulations cited by petitioner include nonrecourse debt in the amount realized only if the purchaser assumes such debt.  Section 1.1001-2(a), Income Tax Regs., provides that the amount realized includes "liabilities from which the transferor is discharged as a result of the sale or disposition."  There is no mention of a requirement that the purchaser must assume the debt for the debt to be discharged as a result of a sale or disposition. Petitioner's argument under section 1.1034-1(b)(4) Income Tax Regs., is equally unpersuasive.  Section 1034 requires a taxpayer

to defer recognition of gain realized on the sale of the taxpayer's principal residence in certain circumstances. We are not concerned with a residence in the case before us. Section 1.1034-1(b)(4), Income Tax Regs., is simply not relevant to petitioner in this case.

Additionally, petitioner argues that Liberty Mirror Works v. Commissioner, 3 T.C. 1018 (1944), supports his contention that a mortgagor realizes COI income when a lender agrees to discharge a debt encumbering property and to release the accompanying debt in exchange for the assignment of the proceeds from the sale of the property. Petitioner's reliance on Liberty Mirror also is misplaced. In Liberty Mirror, the bank held a mortgage on the taxpayer's property to secure a loan. As part of its settlement with the bank, the taxpayer agreed to forward the proceeds from the sale of the property to the bank. Because the taxpayer's debt exceeded the proceeds from the sale, the bank agreed to cancel the taxpayer's remaining indebtedness. This Court held that the cancellation of the taxpayer's remaining indebtedness constituted a gift[5] and that, consequently, the taxpayer realized no income. Although the facts there bear some similarity to those of the instant case, it does not help petitioner because in

---

[5]The precedential value of the gift rationale, as articulated by the Supreme Court in Helvering v. American Dental Co., 318 U.S. 322 (1943), and followed by this Court in Liberty Mirror Works v. Commissioner, 3 T.C. 1018 (1944), has been curtailed by subsequent authority, including Commissioner v. Jacobson, 336 U.S. 28 (1949).

Liberty Mirror we did not consider the character of the nonexistent income. Danenberg v. Commissioner, 73 T.C. at 383. Thus, we are satisfied that the discharge of the loans, the transfer of the property, and the assignment of the sale proceeds constitute a single integrated sale or exchange.

Alternatively, petitioner argues that Briarpark realized $9,200,000 of COI income in 1987 when InterFirst and Briarpark agreed to convert the outstanding balance of the original loan, which exceeded the fair market value of the property, from recourse to nonrecourse debt.

Whether a debt has been discharged is dependent upon the substance of the transaction. Cozzi v. Commissioner, 88 T.C. 435, 445 (1987). A debt is considered to be discharged at the point when it becomes clear that the debt will never have to be paid. Id. In deciding when such a moment occurs, we must consider the actions of the parties together with other facts and circumstances relating to the likelihood of payment. Id. Any identifiable event that fixes with certainty the amount to be discharged may be taken into consideration. Id. (citing United States v. S.S. White Dental Manufacturing Co., 274 U.S. 398 (1927)).

The existence of a faint possibility that a debt may be collected does not prevent the recognition of COI income. Exchange Sec. Bank v. United States, 492 F.2d 1096, 1099 (5th Cir. 1974); cf. Fidelity-Philadelphia Trust Co. v. Commissioner,

23 T.C. 527, 531 (1954). The fact that a creditor has failed to remove a debt from its books does not mean that the debt has not been canceled. Exchange Sec. Bank v. United States, supra.

Based upon the principles set forth above, we must conclude that an identifiable event fixing with certainty the discharge of part of the original loan did not occur in 1987. At the same time they modified the original loan, InterFirst agreed to provide Briarpark the additional build-out loan in the amount of $1,500,000 for tenant improvements.

We are not convinced that converting the undersecured original loan from a recourse to a nonrecourse debt constitutes an identifiable event. See Zappo v. Commissioner, 81 T.C. 77, 87 (1983). Petitioner has not established that the conversion of the debt made it highly unlikely, or impossible to estimate, whether and when the debt would be repaid. Commissioner v. Tufts, 461 U.S. 300 (1983); Gibson Prods. Co. v. United States, 637 F.2d 1041, 1047 (5th Cir. 1981). In our view, InterFirst's willingness to make the build-out loan indicates its belief that the tenant improvements would increase the value of the property. Moreover, InterFirst increased the lien securing the original loan according to the agreed modifications. Such actions are not consistent with discharging the loan. The totality of the circumstances leads us to believe that InterFirst still intended to enforce its rights in 1987. In addition, petitioner does not point to any identifiable event indicating Briarpark's

abandonment of the property in 1987.  Accordingly, we are satisfied that Briarpark did not realize COI income of $9,200,000 in 1987.

Having found that Briarpark discharged the loans as a result of the sale in 1989, we turn to consider the effect of that determination upon the characterization of Briarpark's income. The amount realized on the sale, exchange, or disposition of property encumbered by nonrecourse debt includes the entire balance of the obligation.  Commissioner v. Tufts, supra; Crane v. Commissioner, 331 U.S. 1 (1947); Lockwood v. Commissioner, 94 T.C. 252 (1990).  In this case, section 61(a)(12) has no application to a sale or exchange of property subject to nonrecourse liabilities.  Estate of Delman v. Commissioner, 73 T.C. 15 (1979).

In sum, we hold that the disposition of the property constitutes a sale or exchange for purposes of section 1001 and the regulations thereunder and that the income Briarpark realized must be characterized as gain derived from dealings in property under section 61(a)(3).  We have considered all of the other arguments and, to the extent we have not addressed them, find them to be without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.