AXELRAD, J.T.C.
In this State tax matter, the taxpayers[1] contest the Director of the Division of Taxation’s (the “Director’s”) assessment of additional New Jersey Gross Income Tax for the 1993 tax year with *68 respect to three-tiered pass through income derived from a limited partnership interest held by the taxpayer. The taxpayers paid the assessment in the amount of $9,630.06, plus interest, totaling $13,432.87, on May 13,1998 under protest. The taxpayers seek to have the Director’s Final Determination of April 16,1997 set aside and the Division of Taxation (the “Division”) ordered to refund the assessment and interest.
The issues 'in this case are:
(1) Was the pass through partnership income received by the taxpayer for the 1993 tax year “Discharge of Indebtedness” (“DOI”) income and, if so, is this income taxable for New Jersey Gross Income Tax purposes?
(2) If the pass through partnership income was improperly characterized as DOI income, was it taxable for New Jersey Gross Income Tax purposes as “net gains or income from disposition of property” under N.J.S.A. 54A:5-1(c)?
(3) If so, did the transaction generating the net gains or income from disposition of property occur’ in 1992, not 1993, as a result of which the Director is precluded by the Statute of Limitations, N.J.S.A. 54A:9-4(a), from assessing additional New Jersey Gross Income Tax for the 1992 year?
(4) Alternatively, should the pass through partnership income be characterized as “distributive share of partnership income” and be taxable for New Jersey Gross Income Tax purposes under N.J.S.A 54A:5-1k?
The matter came before the court pursuant to a Partial Stipulation of Facts and hearing. The following facts have been stipulated: On October 28, 1983 the taxpayer acquired a 4.67% limited partnership interest in 501 Associates, a Pennsylvania Limited Partnership, which had been formed on May 27, 1983. On July 2, 1983, 501 Associates acquired a 37.5% limited partnership interest in Franklin Towne Lodge Limited Partnership (“Franklin Towne”), a Maryland entity, and on August 2, 1983, a Certificate of Limited Partnership was executed for Franklin Towne. 501 Associates contributed to Franklin Towne an Agreement of Sale, which it entered into as Buyer on May 27, 1983, for the purchase *69 of the Franklin Motor Inn, in Philadelphia, Pennsylvania (the “Property”), which was the sole asset of Franklin Towne.
Franklin Towne’s acquisition of the Property was financed by Chemical Bank through the Philadelphia Authority for Industrial Development (“PAID”). On October 31, 1988 title to the Property was transferred to PAID for $2,730,000 and PAID executed a mortgage and note to Chemical Bank in the principal amount of $6,720,000, with Franklin Towne as equitable owner, executing a joinder attached to the mortgage. Contemporaneously, a document entitled “Building Loan Agreement and Collateral Assignment Agreement” was executed among Chemical Bank, PAID, and Franklin Towne and an Installment Sale Agreement was executed between PAID and Franklin Towne, whereby Franklin Towne agreed to be liable to Chemical Bank for the debt incurred with respect to the loan provided for the acquisition of the Property. Additionally, personal guarantees were executed by the limited partners of 501 Associates, including the taxpayer, as well as the other limited partners of Franklin Towne. 501 Associates did not guarantee any payment.
On March 20, 1990 Chemical Bank obtained judgment against PAID in the U.S. District Court of Pennsylvania in the amount of $6,219,070.55. Chemical Bank also filed a federal court suit against the personal guarantors, including the taxpayer, and on July 30, 1990 obtained judgment in the amount of $6,611,528.45 and commenced execution proceedings.
On June 25, 1990 Franklin Towne filed a voluntary Petition for Reorganization, pursuant to Chapter 11 of the United States Bankruptcy Code, which was terminated on June 5, 1992. Chemical Bank foreclosed its mortgage on the Property and on July 1, 1992 the Property was sold for $5,000 by U.S. Marshal’s deed. The taxpayer testified that he made no payments to Chemical Bank and after extensive discovery, on June 24, 1993 the bank marked the judgment as satisfied against the individual guarantors, including the taxpayer.
The tax returns for 501 Associates and Franklin Towne were prepared by the same accounting firm. Franklin Towne filed a *70 1992 U.S. Partnership Income Tax return, which was designated as a “final return,” on which it reported the foreclosure of the property. On Schedule K of this return and the attached statement Franklin Towne reported $416,739 as ordinary income from trade or business, —$582,608 as § 1231 loss, and $9,941,022 as “other income” identified as “Cancellation of Debt” income. Franklin Towne issued 1992 K-l returns to its limited partners, which reported as 501 Associate’s proportionate share, $156,277 as ordinary income from trade or business, — $218,478 as § 1231 loss, and $3,728,411 as “other income” identified as “Cancellation of Debt” income.
On Schedule K of 501 Associates’ 1992 U.S. Partnership Income Tax return and the attached statements, 501 Associates reported $156,277 as ordinary income from trade or business, — $218,478 as § 1231 loss, and $713,843 as “other income” identified as “Pass Thru from FT Lodge LP $3,728,411 [minus] Pass Thru from FT Lodge LP (loss) — $3,014,568.[2] Although no explanation was provided by the taxpayer, from a review of the tax returns it appears that 501 Associates created a contingent liability for 1992 because of the liability of its limited partners on the personal guarantees they executed in connection with the Chemical Bank mortgage and note, and kept the character of the obligation as DOI income. 501 Associates issued 1992 K-l returns to its limited partners, which reported as the taxpayer’s proportionate share, $7,298 as ordinary income from trade or business, - $10,203 as § 1231 loss, and $33,337 as “other income from Multiple Activity Sch. (Activity 1 — Franklin Towne Lodge LP $174,117 [minus] Activity 2 — Franklin Towne Lodge LP - $140,780).” The $33,337 in “other income” was not attributed to the “cancellation of debt” on the K-l form issued by 501 Associates to the taxpayer.
Franklin Towne did not file a 1993 U.S. Partnership Income Tax return and did not issue any K-1 returns to 501 Associates. 501 *71 Associates filed a 1993 U.S. Partnership Income Tax return, which was designated as a “final return.” On Schedule K of this return and the attached statement 501 Associates reported $3,023,943 as “other income” identified as “Cancellation of Debt Income from Forgiveness of Chemical Loan.” This is the same amount which had been earned over as a liability from the 1992 return. It appears that 501 Associates retained the character of the income as reported by Franklin Towne, but spread it out over two years and when the personal judgments were satisfied against 501 Associates’ limited partners, including the taxpayer, in 1993, it reversed the contingent liability it placed on its books in 1992 and passed through each limited partner’s share as DOI Income. 501 Associates issued 1993 K-l returns to its limited partners, including the taxpayer, and reported $141,218 as the taxpayer’s 4.67% share of the above-mentioned “other income” identified as “Cancellation of Debt Income from Forgiveness of Chemical Loan.”
For 1993, the taxpayers filed a joint U.S. Income Tax return and joint New Jersey Gross Income Tax return. On Schedule E of their 1993 federal return, the taxpayers reported the income, $141,218, which was reflected on the 501 Associates K-l form, as “passive income from 501 Associates.” The taxpayers did not include the $141,218 in any category of New Jersey Gross Income on their return.
The Division’s auditor determined that the taxpayers should have reported as additional gross income to New Jersey in 1993, the $141,218 which resulted from what she labeled as “501 Associates — Forgiveness of Debt.” Accordingly, in the Notice of Deficiency, the Director’s auditor increased the taxpayer’s New Jersey taxable income by $137,572.26 in the income category “Net Gains/ Disp. Property” by offsetting against the $141,218 income, losses incurred by the taxpayers from the sale of other investments.
The taxpayer, who is an attorney licensed to practice law in the Commonwealth of Pennsylvania, was not the tax matters partner for either Franklin Towne or 501 Associates and testified that he had no input in the preparation of any of the returns. The taxpayer’s 1993 New Jersey Gross Income Tax return reflected all *72 of the income reported to him in the K-l form issued by 501 Associates. The taxpayer testified that he was not aware at the time he prepared his 1993 New Jersey return that Franklin Towne had filed a final year return for 1992 and that 501 Associates had filed a final year return for 1993. Had he been aware, however, he would not have reported anything differently for New Jersey as it was his position that DOI income was not subject to New Jersey Gross Income Tax. In the alternative, if it were gain from the sale or exchange of property that he received instead of DOI income, the taxpayer testified that he would have reported and paid New Jersey Gross Income Tax on the gain when he filed his 1992 New Jersey return since he claimed there was no transaction in 1993 which generated gain on sale.
Review of the assessment against the taxpayers must be made in light of the presumptive validity of the Director’s Final Determination. The Director’s assessments are entitled to a presumption of correctness. H.J. Bradley, Inc. v. Director, Div. of Taxation, 4 N.J.Tax 213, 229 (Tax 1982). Courts have recognized the Director’s expertise in the highly specialized and technical area of taxation. Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984). The taxpayers bear the difficult burden of establishing that the Director’s application of the Gross Income Tax Act is unreasonable. Metpath, Inc. v. Director, Div. of Taxation, 96 N.J. 147, 152, 474 A.2d 1065 (1984). However, this deference is “not total, as the courts remain the ‘final authorities’ on issues of statutory construction and are not obligated to ‘rubber stamp’ them approval of the administrative interpretation.” New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 575, 384 A.2d 795 (1978) (citations omitted).

I. Is DOI Income Taxable under the New Jersey Gross Income Tax Act?

The Internal Revenue Code (“the Code”) taxes income from all sources and expressly includes DOI income. I.R.C. § 61(a)(12). When the New Jersey Legislature intended to incorporate federal income tax concepts, it did so explicitly, and in the *73 absence of a specific statutory provision it should not be assumed that federal principles should apply to the Act. Sutkowski v. Director, Div. of Taxation, 312 N.J.Super., 465, 481-82, 712 A.2d 229 (App.Div.1998) citing Smith v. Director, Div. of Taxation, 108 N.J. 19, 32-33, 527 A.2d 843 (1987).
The New Jersey Gross Income Tax Act differs from the federal model in several respects. “Individuals in New Jersey are taxed on their New Jersey gross income, defined to consist of fourteen categories. N.J.S.A. 54A:5-1.” Smith v. Director, Div. of Taxation, 108 N.J. 19, 24-25, 527 A.2d 843 (1987). Subsequent to the Smith case, the Legislature added two categories of taxable income; thus, there are currently sixteen categories of income taxable under the Gross Income Tax Act.[3] Partnerships, as such, are not subject to Gross Income Tax. Instead, a partnership’s earnings are “passed through” to its partners, who are subject to Gross Income Tax in their individual capacities. N.J.S.A. 54A:2-2, :5-4.
The New Jersey Gross Income Tax Act is silent with respect to the taxation of DOI income. DOI income is not included within any of the specifically enumerated categories. Gross income consists of several categories, two of which are (1) the net gains or income from the disposition of property and (2) income from the distributive share of partnership income. N.J.S.A. 54A:5-1 provides, in relevant part, that:
Now Jersey gross income shall consist of the following categories of income: ...
c. Net gains or income from the disposition of property. Net gams or net income, less net losses, derived from the sale, exchange or other disposition of property, including real or personal, whether tangible or intangible as determined in accordance with the method of accounting allowed for federal income tax purposes. For the purpose of determining gain or loss, the basis of property shall be the adjusted basis used for federal income tax purposes, except as expressly provided for under this act, but without a deduction for penalties, fines, or economic benefits .
k. Distributive share of partnership income
*74 Moreover, the Legislative history evidences a clear intent to specifically omit DOI as an identified class of income taxable under the Gross Income Tax Act (the “Act”). The original bill introduced on February 19, 1976, A. 1513, followed the federal model to the extent that it established a New Jersey Gross Income Tax on income from all-sources unless expressly excluda-ble, and provided for seventeen categories of taxable income which were illustrative, but not all-encompassing. Similar to the Internal Revenue Code, “Income from discharge of indebtedness” was expressly included as a taxable category.
54A:5-1. New Jersey gross income defined. Except as otherwise provided in this act, New Jersey gross income means all income from whatever source derived, including but not limited to the following:
1. Income from discharge of indebtedness];].
The Assembly Committee Substitute adopted March 10, 1976 and the final version of the Act, which was adopted as L.1976, c. 47, § 54A:5-1, eff. July 8, 1976, operative Aug. 30, 1976 significantly modified the broad federal concept of including income from all sources and provided that: “New Jersey gross income shall consist of the following categories of income:” (emphasis added), limiting taxable income to fourteen specific categories, and specifically deleting “income from discharge of indebtedness” as an includible source.
“[Wjhere the language under question was rejected by the legislature and thus not contained in the statute it provides an indication that the legislature did not want the issue considered.” 2A Sutherland, Statutory Construction § 48.04 (5th ed.1992). Furthermore, “Where the legislature adopts a new law, using as a source a statute theretofore enacted in another jurisdiction, but omits a provision of the source statute, the omission is construed as being deliberate.” Airwork Service Division v. Director, Div. of Taxation, 2 N.J.Tax 329, 346 (Tax 1981), aff'd, 4 N.J.Tax 532 (App.Div.1982), aff'd, 97 N.J. 290, 294, 478 A.2d 729 (1984), cert. denied, 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985).
In fact, in one Tax Court case the Director “concede[d] that DOI income is not taxable under the New Jersey Gross Income Tax Act.” Vasudev v. Director, Div. of Taxation, 13 N.J.Tax 223, *75 231 (Tax 1993). Additionally, the New Jersey Tax Court has recognized that DOI income is not subject to gross income tax, as this tax is imposed only upon income classifications defined and enumerated in the statute. Koch v. Director, Div. of Taxation, 15 N.J.Tax 387, 390 (Tax 1995), aff'd on other grounds, 17 N.J.Tax 321 (App.Div.1997), rev’d on other grounds, 157 N.J. 1, 722 A.2d 918 (1999). In Koch the taxpayer sold his interest in a limited partnership and, at the time of and as part of the consideration for the sale, obtained a release from creditors of the partnership of his personal liability for partnership debt. The taxpayer did not report the profit from the sale of his partnership interest as New Jersey gross income based upon his position that it was DOI income and was, therefore, not taxable. The Director argued that the DOI income was subject to New Jersey Gross Income Tax and, if it were not, that the amount of the indebtedness from which he was released at the time of sale was taxable as a net gain from the disposition of property under N.J.S.A. 54A:5-1(e). The judge recognized the “disparate treatment” of DOI income under the federal Internal Revenue Code and the New Jersey Gross Income Tax Act and stated:
Discharge of indebtedness income is subject to federal taxation pursuant to section 61 of the Code, which defines gross income as “all income from whatever source derived” and also, specifically excludes income from discharge of indebtedness. Section 61(a)(12). The New Jersey Gross Income Tax Act, on the other hand, only taxes expressly identified classes of income, in which discharge of indebtedness is not included. This disparate treatment between federal and New Jersey law has been acknowledged by our Supreme Court in Smith v. Director, Div. of Taxation [supra, citation omitted, and] Vasudev v. Taxation Div. Director [supra, citation omitted].
[Koch v. Director, Div. of Taxation, supra, 15 N.J.Tax at 390.]
The Tax Court ultimately concluded, based in part on the fact that there was no forgiveness of indebtedness at the partnership level, that the taxpayer’s personal liability for his share of partnership debt which was released at the time of the sale of his interest in the partnership did not constitute DOI income. Rather, the amount of released indebtedness was properly includable in the amount realized in connection with the sale, and thus the income attributable to the sale of the taxpayer’s partnership interest was taxable under the Gross Income Tax Act as net gain from disposi *76 tion of property pursuant to N.J.S.A. 54A:5-1(c). The judge further held in favor of the Director’s position that the taxpayer must use the adjusted basis for federal income tax purposes in determining gain or loss under the Act, even where he was unable to take advantage of the partnership losses under the Act. Id. at 393-94. The taxpayer appealed the latter issue involving the determination of basis, which was affirmed by the Appellate Division but reversed by the State Supreme Court. Koch v. Director, Div. of Taxation, supra, 17 N.J.Tax 321 (App.Div.1997), rev’d 157 N.J. 1, 722 A.2d 918 (1999). The DOI issue was not cross appealed by the Director or addressed by the Appellate Division or Supreme Court.
The court finds that when the Legislature enacted the Act, it made a' conscious decision not to incorporate the federal income tax model of including income from all sources and chose, instead, to limit taxable income to fourteen specific categories which it has subsequently expanded to sixteen categories. Furthermore, the deletion of the category “Income from Discharge of Indebtedness” as an includible source of taxable gross income contained in the original Assembly Bill from the final version of the Act, indicates a clear intent by the New Jersey Legislature not to subject DOI income to New Jersey Gross Income Tax.

II. Was the Income Involved Herein DOI Income or Net Gains or Income from Disposition, of Property?

The Director submits that the taxpayer actually received gain from the disposition of the Franklin Motor Inn and the cancellation of the Chemical loan for this property, which constitutes taxable income for New Jersey Gross Income Tax purposes under N.J.S.A. 54A:5-1(c). The Director submits that this income was passed through from Franklin Towne to its partner, 501 Associates, which, in turn passed income through to its partner, the taxpayer.
In Koch the income which the Director sought to tax as net gains or income from disposition of property, was reported for federal income tax purposes as capital gain income. In the present case, however, the income was characterized for federal *77 income tax purposes by both limited partnerships, as well as by the taxpayers, as ordinary income attributable to “Cancellation of Debt Income from Forgiveness of Chemical Loan.”
The statutory definition of “net gains or income from disposition of property” requires that the net gain or income be “determined in accordance with the method of accounting allowed for federal income tax purposes.” N.J.S.A. 54A:5-1c. In Koch, the New Jersey Supreme Court, when reversing the trial court in connection with the basis calculation, quoted from Baldwin v. Director, Div. of Taxation, 10 N.J.Tax 273, 284 (Tax 1988), aff'd, 237 N.J.Super. 327, 567 A.2d 1021 (App.Div.1990), as follows:
Courts have interpreted section 5-1c expansively and have recognized that section 5-1c ‘is not limited to the recognized overall methods of accounting, such as the cash method or the accrual method, but rather was intended to include any method or system as used for federal tax purposes “by which taxpayers determine the amount of their income, gains, losses, and credits as well as the time when such items must be realized or recognized ” ’
[Koch, supra, 157 N.J. at 10, 722 A.2d 918.]
A partner is required, for federal income tax purposes, to treat an item of partnership income consistent with the treatment of that item of partnership income by the partnership. I.R.C. § 622(a). Temporary Regulation § 301.6222(a)-IT obligates a partner to report an item of income consistent with the partnership’s treatment thereof, including its characterization. In the present case, 501 Associates issued to the taxpayer a K-1 federal form for the 1993 tax year characterizing the $141,218 income as ordinary income, attributable to the “Cancellation of Debt Income from Forgiveness of Chemical Loan.” In compliance with the Code and Regulations, the taxpayers reported this item on their 1993 U.S. Income Tax return as DOI ordinary income and paid the tax due thereon.
The taxpayer submits that the Director’s re-characterization of this income for New Jersey purposes places the taxpayers “on the horns of a dilemma.” The taxpayers were required to be consistent in the accounting method used to characterize the DOI income on their U.S. Income Tax return and for New Jersey Gross Income Tax purposes. The taxpayer claims that if he had any justification to re-characterize the ordinary DOI income as *78 capital gain for federal purposes, he would have done so, because it would have reduced his Federal Income Tax liability by significantly more than any additional New Jersey Gross Income Tax he would have been required to pay on the net gains or income from the disposition of the property.
On the other hand, the Director submits that the K-l form issued to the taxpayer by 501 Associates for the 1993 tax year reporting $141,218 as “Cancellation of debt income from forgiveness of Chemical loan” was a descriptive label chosen by 501 Associates for its federal reporting of this income and is not legally dispositive as to the manner in which the taxpayer’s share of the “cancellation” of $141,218 should be characterized or taxed by the State of New Jersey. The Director contends that New Jersey is not required to “acquiesce in and blindly accept the label that a taxpayer places on a transaction.” Centex Homes v. Director, Div. of Taxation, 241 N.J.Super. 16, 17, 574 A.2d 448 (App.Div.1990). According to the Director, the court should look beyond the fact that Franklin Towne and 501 Associates reported the subject income as “Cancellation of debt income,” analyze the transaction, and determine that the $141,218 meóme reported by the taxpayer is actually gain realized on the sale or disposition of property. As such, it would be taxable for New Jersey Gross Income purposes pursuant to N.J.S.A. 54A:5-1c for the 1993 year.
It appears, at least, that the taxpayer had separate DOI income for New Jersey, as well as federal, purposes in 1993 when, a year-after the foreclosure sale, Chemical Bank marked the judgment as satisfied against the individual guarantors, including the taxpayer, and his personal debt relative to the Franklin Towne property was released. “[W]hen a mortgage, be it recourse or nonrecourse, is simply released independently of the disposition of the collateral, discharge of indebtedness income is recognized. Gershkowitz v. Commissioner, 88 TC 984,1987 WL 49310 (1987). Discharge of indebtedness is income subject to tax under the Internal Revenue Code. See section 61(a)(12).” Vasudev v. Director, Div. of Taxation, 13 N.J.Tax 223, 232 (Tax 1993). This “Cancellation of debt income from forgiveness of Chemical loan” was duly reported to *79 taxpayer by 501 Associates in 1993 and, thus, the taxpayer reported it accordingly.
If, however, the court focuses on the transaction as being the foreclosure sale of the Franklin Motor Inn, the federal cases cited by the Director seem to indicate that the subject income passed through from Franklin Towne to the taxpayer could be characterized for New Jersey Gross Income Tax purposes as “net gains or income from disposition of property” under N.J.S.A. 54A:5-1(e), despite the way that the two partnerships reported the income. In 2925 Briarpark, Ltd. v. Commissioner, 73 T.C.M. (CCH) 3218 (1997), aff'd, 163 F.3d 313, 317-18 (5th Cir.1999), the court discussed the distinction between income realized from DOI under I.R.C. § 61(a)(12) and income realized from “gains derived from dealing in property under I.R.C. § 61(a)(3).” The latter section applies when the taxpayer agrees to surrender the property in exchange for the cancellation of a debt, thus relieving him of title to the property as well as his obligation to repay the debt. In that situation the entire amount of the canceled nonrecourse indebtedness is included in the amount realized under I.R.C. § 1001. Id. at 318. It is an established federal principle that “a foreclosure sale constitutes a ‘disposition of property' within the meaning of § 1001(b). [Helvering v. Hammel, 311 U.S. 504, 506-11, 61 S.Ct. 368, 85 L.Ed. 303 (1941)]; Cox [v. Commissioner], 68 F.3d [128,] 133 [5th Cir.1995]”, Ibid., and that “the amount realized on the [foreclosure] sale includes the amount of indebtedness discharged as a result of the foreclosure. See Crane v. Commissioner, 331 U.S. 1, 14, 67 S.Ct. 1047, 91 L.Ed. 1301 (1947).” Wicker v. Commissioner, 66 T.C.M. (CCH) 757 (1993), aff'd, 50 F.3d 12 (8th Cir.1995). These cases are based on the principle that when an obligation to repay a debt is forgiven or discharged, the borrower benefits from the discharge because it frees the debtor’s assets which were dedicated to satisfaction of that liability and increases the “net worth” of the debtor, thereby constituting economic gain.
The court is aware, however, of the recognition by the federal courts that nonrecourse debt and recourse debt are treated differently by certain sections of the Code, 2925 Briarpurk, supra at 317-18, that the federal and New Jersey cases cited by the *80 Director involve nonrecourse indebtedness, sales with assumptions of mortgages or other encumbrances, and, for the most part, holdings relative to the calculation of basis and the “amount realized” rather than a characterization of the income. See e.g., Commissioner v. Tufts, 461 U.S. 300, 103 S.Ct. 1826, 75 L.Ed.2d 863 (1983); Crane, supra; 2925 Briarpark, supra; Allan v. Commissioner, 86 T.C. 655, 1986 WL 22112 (1986), aff'd, 856 F.2d 1169 (8th Cir.1988); Schiff v. Director, Div. of Taxation, 15 N.J.Tax 370 (Tax 1995); Vasudev v. Director, Div. of Taxation, supra; Spinella v. Director, Div. of Taxation, 13 N.J.Tax 305 (Tax 1993). The taxpayer is correct that neither the federal nor State case law addresses the situation herein involving a foreclosure sale, with recourse indebtedness and no assumption of the mortgage, or definitively requires the court to conclude that the subject income, which was generated as a result of the Marshal’s sale of the Franklin Motor Inn, should be re-characterized as income from disposition of property.
The court, however, does not have to reach a conclusion as to whether the subject income generated as a result of the foreclosure sale should be re-characterized, because even if it were considered income from disposition of property under N.J.S.A. 54A:5-1(c), the transaction occurred in 1992, not 1993, as discussed more fully below. Thus, if 501 Associates’ reporting is correct, i.e. that it is DOI income, the income is not taxable for the 1993 year. If, however, 501 Associates’ reporting is incorrect and the meóme should be re-characterized as net gams or income from disposition of property, it should have been taxed by New Jersey in 1992.

III. Assuming arguendo that the income should be re-charac-terked by the Division fivm DOI income to net gains or income from disposition of property, in ivhat year did the disposition of the property occur?

In order for there to be gain for New Jersey Gross Income Tax purposes to be computed in accordance with the computation of gain for federal income tax purposes, fust there must be a transaction generating a gain for federal income tax purposes. In the present case the record is clear that in 1993, the year at issue, *81 there was no transaction generating gain. It is undisputed that the Franklin Motor Inn, the only asset of Franklin Towne, was sold by the foreclosing mortgagee, Chemical Bank, by Marshal’s deed in 1992 and that Franklin Towne filed its final federal income tax return for tax year 1992. It reported the foreclosure and Forgiveness of Debt Income on its federal income tax return and passed it through to its limited partners in 1992, including 501 Associates, through the issuance of a final K-l return which reported 501 Associate’s 37.5% proportionate share of the Forgiveness of Debt Income as $3,728,411. 501 Associates filed a 1992 U.S. Partnership Income Tax return which did not include the Forgiveness of Debt income passed through to it by Franklin Towne, nor did the 1992 federal K-l returns which it issued to its limited partners, including the taxpayer. It appears that 501 Associates retained the character of the income as reported by Franklin Towne in 1992, but spread it out over two years and when the personal judgments were satisfied against 501’s limited partners in 1993, including the taxpayer, it reversed the contingent liability it placed on its books the prior year and passed through each limited partner’s share as DOI income. The only activity that was engaged in by 501 Associates in 1993 was the filing of its final U.S. Partnership Income Tax return and the passing through of the income attributable to the cancellation of the mortgage debt as a result of the 1992 foreclosure sale of the Franklin Motor Inn.
The Director concedes that the subject property was sold in 1992 but asserts that the court should consider the disposition as having occurred in 1993 and uphold the assessment. The Director submits that the taxpayer is bound by the federal reporting of the income and the issuance of the K-l form to the taxpayer by Franklin Towne in 1993. The Director further contends that the sale of the property and the discharge of Franklin Towne’s loan obligation in 1992, and the termination of the litigation against all of the personal guarantors of Franklin Towne’s debt to Chemical Bank and the termination of 501 Associates in 1993, represent an integrated transaction for the purposes of reporting in 1993 the *82 ultimate disposition of the property, as well as the taxpayer’s interest in 501 Associates.
Although the Director may argue that the court should look beyond the label into the substance of the transaction, the Director cannot have it both ways. He cannot urge the court to re-characterize the nature of the income as reported by 501 Associates in 1993 on the basis that the income was improperly reported to the taxpayer as DOI income because the foreclosure generated a net gain or income from disposition of property which was passed through to the taxpayer, but assert that the taxpayer is bound by the year in which it was reported by 501 Associates, regardless of when the transaction constituting the disposition of the property occurred. The Director may argue that the court can characterize the nature of the income differently than was done by either Franklin Towne or 501 Associates, but cannot argue that the court should consider the capital gain income in the year the income was reported, rather than in the year the disposition occurred which generated the income. There is a logical reason that 501 Associates felt the loan obligation was not released in 1992 because of the outstanding personal guaranty and judgment against its partners, so it booked it as a contingent liability and carried it forward as DOI income to 1993. If it is re-characterized by the court, however, as net gains or income from disposition of property, the court must regard that income as having been generated in 1992.
Regardless of when 501 Associates reported the cancellation of debt income, the transaction which generated forgiveness of debt income, i.e. the sale of the Franklin Motor Inn, occurred in 1992. The fact that Chemical Bank satisfied its judgment for the personal guarantees for the Franklin Motor Inn debt against the limited partners of 501 Associates, including the taxpayer, in 1993, does not change the timing of the actual disposition of the property. Thus, even if the income were re-eharaeterized as occurring from disposition of the property rather than as DOI income, the disposition occurred in 1992, not 1993, and thus the Director is precluded from assessing additional gross income tax on that income pursuant to N.J.S.A. 54A:9-4(a) (which limits the time in which the *83 Director may assess any tax under the Gross Income Tax Act to three years after the taxpayer’s return was filed.) See Eiszner v. Director, Div. of Taxation, 18 N.J.Tax 579 (Tax 2000).

TV. Is this distributive share of partnership income?

The Director submits as an alternative argument that the taxpayer received his distributive share of partnership income from 501 Associates which is taxable for New Jersey Gross Income Tax purposes under N.J.S.A. 54A:5-1k. The taxpayer submits that the Director should be precluded from raising this alternative argument because the Director never assessed a deficiency for unreported income from the operation of a business, but, rather, assessed a deficiency for unreported net gains or income from disposition of property, and the issue was not addressed by the Director prior to post-trial briefs. The court finds that this argument was encompassed in the broad language of the Director’s pretrial memorandum and the court’s pretrial order, i.e. whether the taxpayer received “additional New Jersey Gross Income for tax year 1998 resulting from pass through forgiveness of debt.” Furthermore, even if the Director is offering an alternative theory from that set forth in its Final Determination, the Tax Court has held that the Director is not required to state all possible grounds and theories to support the assessment, and should not be precluded from developing any defensive theory to justify the tax, provided he meets due process requirements and acts within the statutory period. See Middlesex Water Co. v. Director, Div. of Taxation, 181 N.J.Super. 338, 3 N.J.Tax 233, 251-254, 487 A.2d 368 (Tax 1981) and Telepages, Inc. v. Director, Div. of Taxation, 9 N.J.Tax 30, 38-39 (Tax 1987). The theory advanced by the Director arises from the same set of facts that gave rise to the assessment and were presented to the court in the Partial Stipulation of Facts and plenary hearing and there is no claim in this case of surprise or prejudice by the taxpayer. Moreover, as Judge Lasser noted in Middlesex Water, the taxpayer is not prejudiced by permitting the Director to articulate an alternative argument than that set forth in the Final Determination since the Tax Court reviews proceedings de novo. Id., 181 *84 N.J.Super. 338, 3 N.J.Tax at 254, 437 A.2d 368; Telepages, Inc., 9 N.J.Tax at 39.
The Director has enacted Regulations which define “distributive share of partnership income” which were codified for the taxable period at N.J.A.C. 18:35-1.14 et seq. (repealed and replaced effective March 15, 1999, by N.J.A.C. 18:35-1.2 et seq.). These Regulations defined a partner’s distributive share of partnership income to consist of a partner’s distributive share of the net profits or losses of a partnership which were derived from the partnership’s conduct of a trade or business. N.J.A.C. 18:35-1.14(c)(2)(I). The pre-1999 Regulations also defined net profits from business to consist of income derived directly from the conduct of a trade or business. N.J.A.C. 18:35-1.25(b).
The Director asserts that the subject income was received by 501 Associates as a result of the cancellation of the Chemical loan in the conduct of its trade or business, as a partner in Franklin Towne, and that this income should have been passed through to the taxpayer as a distributive share of Franklin Towne’s income. According to the Certificate of Incorporation and Partnership Agreements, the business of 501 Associates was to own a percentage interest in Franklin Towne. The business of Franklin Towne was to acquire and operate the Franklin Motor Inn. Although the Certificate of Incorporation contemplated the possibility of capital appreciation when the motel was eventually sold, Franklin Towne was not in the business of buying and selling hotels and motels. As such, the net profits or income arising from the foreclosure of the Franklin Motor Inn and the forgiveness of the Chemical Bank loan were not derived directly from the operation of Franklin Towne’s trade or business. As such, the $141,218 income reported by the taxpayers on them 1993 U.S. income tax return is not taxable for New Jersey Gross Income Tax purposes as a “distributive share of partnership income” under N.J.S.A. 54A:5-1(k).
For the foregoing reasons, the court reverses the Director’s Final Determination of April 16, 1997 and orders him to refund the tax and interest paid in accordance with his assessment.

 Plaintiff, Donna Weintraub, is a party to this action because she filed a joint 1993 New Jersey Gross Income Tax return with her husband, Plaintiff, Stewart Weintraub. Thus, the term "taxpayers” will be used to refer to actions taken by both parties jointly and “taxpaver” will be used to refer to actions taken by Stewart Weintraub individually.

 According to the Schedule L Balance Sheet, Other current liabilities, statement 6, the $3,014,568 represented the "Investment in FT Lodge LP,” which, with the $9,375 loans from partners, constituted the end of tax year total liabilities of $3,023,943.

 L. 1987, c 76, § 56 added subsection o. "Income, gain or profit derived from acts or omissions defined as crimes or offenses under the laws of this State or any other jurisdiction." L 1993, c 173, § 9 added subsection p. “Net pro rata share of S corporation income."